UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ROBERTS, | Case No. EDCV 16-1929 CJC(JC) |
| Plaintiff, | |
| v. | ORDER (1) DISMISSING FIRST AMENDED COMPLAINT WITHOUT PREJUDICE AS TO THREE DEFENDANTS; (2) DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND AS TO EIGHT REMAINING DEFENDANTS; AND (3) DENYING FOUR MOVING DEFENDANTS' MOTION TO DISMISS AS MOOT |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

## I.    BACKGROUND AND SUMMARY

On September 9, 2016 and October 11, 2016, Paul Roberts ("plaintiff"), who is in custody at the California Institute for Men ("CIM"), is proceeding without a lawyer (*i.e.*, "*pro se*"), and has been granted leave to proceed *in forma pauperis*, filed essentially duplicate copies of a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983") against the California Department of Corrections and Rehabilitation ("CDCR") and multiple CIM officials for alleged constitutional violations related to the improper assignment of other inmates to share plaintiff's cell and the inadequate processing of related grievances.

On October 27, 2016, the previously assigned United States Magistrate Judge ("Magistrate Judge") screened and dismissed the Original Complaint and granted plaintiff leave to file a First Amended Complaint ("First Screening Order"). (Docket No. 11).

On November 10, 2016, plaintiff filed the currently operative First Amended Complaint ("FAC") with attached exhibits ("FAC Ex.") asserting claims against the CDCR and ten individuals associated with the CIM: CIM Appeals Coordinators Gill and Padilla, CIM Correctional Officers Ryles and Udave, four unnamed CIM officials identified only as John Does #1-#4, the CIM Warden, and Dr. Jaime. (FAC at 3-6, 22, 23-24). Plaintiff sues the ten individuals in their individual capacities only, and seeks injunctive and monetary relief from all defendants. The First Amended Complaint contains ten claims arising under 42 U.S.C. § 1983 ("Section 1983") (predicated on violations of the Eighth and Fourteenth Amendments) (Claims One through Four), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.* (Claims Five through Seven), Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Rehabilitation Act") (Claim Nine), and state law (Claims Eight and Ten), and essentially complains that defendants failed adequately to protect plaintiff by assigning dangerous inmates to be his cellmates and failed properly to process his grievances regarding the same.

In an Order dated November 18, 2016 ("Second Screening Order"), the Magistrate Judge screened the First Amended Complaint, found that it did not state viable claims against the CDCR, the CIM Warden, and Dr. Jaime, but that it did "state a federal civil rights claim under the Eighth Amendment against defendants Gill, Ryles, Padilla, Udave, and the Doe defendants in their individual capacities only," advised plaintiff that he need not respond to the Second Screening Order if he wished to pursue the action solely against defendants Gill, Ryles, Padilla, and Udave in their individual capacities, but directed plaintiff to file a Second

Amended Complaint within thirty days (*i.e.*, by December 19, 2016) if he wished to pursue the action against any of the other named defendants. (Docket No. 13). Plaintiff did not file a response to the Second Screening Order and did not file a Second Amended Complaint.

On February 21, 2017, defendants Gill, Ryles, Padilla, and Udave filed a Motion to Dismiss First Amended Complaint ("Motion to Dismiss"). On March 13, 2017, plaintiff filed an Opposition to the Motion to Dismiss. The Motion to Dismiss has been submitted for decision.

First, the Court agrees with and adopts the First Screening Order, and finds that the Magistrate Judge properly dismissed the Original Complaint with leave to amend for the reasons discussed therein.

Second, the Court further agrees with and adopts the Second Screening Order to the extent it finds that the First Amended Complaint fails to state a claim against the CDCR, the CIM Warden, and Dr. Jaime, construes plaintiff's failure to file a response to the Second Screening Order and a Second Amended Complaint as an election to proceed solely as against defendants Gill, Ryles, Padilla, Udave and John Does #1-#4 in their individual capacities ("Remaining Defendants"), and dismisses this action without prejudice as against the CDCR, the CIM Warden and Dr. Jaime ("Dismissed Defendants").[1]

Third, and for the reasons explained below, the Court disagrees with and declines to adopt the Second Screening Order to the extent it finds that the First Amended Complaint adequately states a claim against the Remaining Defendants and concludes, upon its own screening of the Second Amended Complaint that dismissal of all claims against the Remaining Defendants with leave to amend is appropriate.

---

[1] As the Dismissed Defendants are the only defendants named in Claims Six and Seven, such order necessarily encompasses dismissal of Claims Six and Seven without prejudice.

3

1  Finally, in light of the foregoing determination, the Motion to Dismiss is

2  moot and is denied as such without prejudice.

3  **II.    THE FIRST AMENDED COMPLAINT**[2]

4      Liberally construed, the First Amended Complaint and plaintiff's attached

5  exhibits reflect, in pertinent part, the following:

6      Plaintiff is a 56-year-old mobility impaired inmate who suffers from an array

7  of medical issues, including "Atrial Fibrillation," and has been prescribed

8  "Warfarin," a medication that can cause "uncontrollable bleeding." (FAC ¶¶ 11-

9  12).

10  **A.    Claim One – Section 1983 – Eighth and Fourteenth Amendments**

11      **– Defendants John Doe #1, Ryles and Gill**

12      **1.    April 2014 Assignment of Inmate Ricky Adams to**

13          **Plaintiff's Cell ("Adams Cell Assignment")**

14      Ricky Adams was an approximately 25 year old inmate "well known" by

15  "staff and inmates" for displaying "aggressive sexual behavior" towards other

16  inmates and his own cellmates. (FAC ¶ 18).  Adams was previously in a fight with

17  a cellmate. (FAC ¶ 19).  On April 15, 2014, Adams "brutally assaulted" inmate

18  Munson while exiting the dining hall – after which Adams was rehoused but not

19  disciplined. (FAC ¶ 20).  Thus, at approximately 10:00 p.m. on April 15, 2014,

20  defendant John Doe #1 ordered Adams to be moved into plaintiff's cell – a cell

21  plaintiff had previously occupied by himself. (FAC ¶ 17; FAC Ex. A1).

22  Defendant Ryles escorted Adams to plaintiff's cell. (FAC ¶ 17).

23      When Adams first approached the cell, he said to plaintiff "If your [sic] a

24  sex offender, tell me now because I don't live with sex offenders and if I find out

25  after I move in your [sic] going to have a problem." (FAC Ex. A1, A2).  Plaintiff

26

27  _____

28      [2]The Court summarizes only the alleged facts underlying the remaining federal claims –
Claims One through Five and Claim Nine – against the Remaining Defendants.

4

"advised Adams that [he] did in fact have a past [sex] offense [from] 35 years ago[,]" whereupon Adams returned to the control office and advised defendant Ryles that Adams and plaintiff "could not safely live together" and that Adams "would not accept the housing assignment." (FAC Ex. A2). Inmate Adams informed defendant Ryles that Adams had "extreme animosity towards plaintiff" and would rather be housed "with a particular homosexual of his choice." (FAC ¶ 22). After about five minutes, plaintiff approached the control office and overheard defendant Ryles "repeatedly state to Adams 'Just don't talk to the mother f--ker.'" (FAC Ex. A2).

Plaintiff also said that he refused to accept Adams as a cellmate, and informed defendant Ryles that Adams was plaintiff's enemy, and that plaintiff feared for his own safety if he was forced to share a cell with Adams. (FAC ¶ 21). Defendant Ryles then stated to plaintiff, "Get back in your f--king cell." (FAC ¶ 23). Plaintiff was "intimidated" by defendant Ryles and "fearful to attempt further refusal of inmate Adams." (FAC ¶ 23). After several minutes, Adams was also convinced to enter the cell, and the cell door was then closed with the two men inside. (FAC ¶ 23).

The following morning plaintiff refused to reenter the cell with inmate Adams and reported to the facility sergeant that Adams had sexually assaulted him. (FAC ¶ 24). Adams was rehoused, but no disciplinary action was taken against Adams, and "no further interview was conducted regarding plaintiff's allegations." (FAC ¶ 24).

### 2. Plaintiff's Inmate Appeals Related to the Adams Cell Assignment

On April 21, 2014, plaintiff filed a CDCR 602 Inmate/Parolee Appeal form ("CDCR 602"), which was assigned Log # CIM-C-14-01471 ("Grievance CIM-C-14-01471"), and in which plaintiff made a "staff complaint" that defendant Ryles had failed to comply with Title 15, California Code of Regulations ("Cal.

Code Regs." or "CCR"), section 3269.1,[3] and had "deliberately placed plaintiff's life in danger by forcing plaintiff to house with inmate Adams, knowing that Adams was violent and that inmate Adams had threatened plaintiff prior to entering the cell with plaintiff." (FAC ¶ 25; see FAC Ex. A1, A2, A4).

On April 28, 2014, defendant Gill improperly screened out Grievance CIM-C-14-01471, "claiming plaintiff was making general allegations but failed [sic] to state facts." (FAC ¶ 26; see FAC Ex. A4). Defendant Gill's reasoning was "completely without merit." (FAC ¶ 26).

On or about May 5, 2014, plaintiff filed an appeal of Grievance CIM-C-14-01471 "alleging improper screening," and also submitted a "notice of default alleging non-compliance with [15 CCR section] 3084.1(a)."[4] (FAC ¶ 27; FAC Ex. A4). The appeal was screened out by defendant Gill because "[plaintiff] failed to demonstrate a material adverse effect upon [his] welfare." (FAC ¶ 27; FAC Ex. A5). In the screening notice, defendant Gill also stated "[i]nmate Adams was bed moved from your cell without incident." (FAC Ex. A5).

Plaintiff attempted to have "third level appeals" intervene, claiming that Grievance CIM-C-14-01471 "was being purposely screened to cover-up staff misconduct of avoiding compliance with CDCR policy[]" but plaintiff's request was denied. (FAC ¶ 28).

On May 27, 2014, plaintiff filed a claim with the state claims board, which was ultimately denied. (FAC ¶ 29).

///

---

[3]Title 15, CCR section 3269.1 provides for "Integrated Housing," prohibits an inmate's race from being used as a primary determining factor in housing an institution's male population, and calls for inmate housing assignments to be made on the basis of available documentation and individual case factors including "[c]ommitment offense[,]" and "[d]isciplinary history[.]"

[4]Title 15, CCR section 3084.1 provides for a right to appeal internal inmate grievances and sets out certain policies and procedures relating to the same.

**B. Claim Two – Section 1983 – Eighth and Fourteenth Amendments – Defendants John Doe #2, Padilla and Udave**

    **1. December 2015 Assignment of Inmate Cantrell to Plaintiff's Cell ("Cantrell Cell Assignment")**

Plaintiff remained in a cell by himself "for a period of time" after Adams was removed. (FAC ¶ 33).

In or about December 2015, defendant John Doe #2, Facility "C" Program Sergeant, directed that inmate Cantrell be moved to plaintiff's cell. (FAC ¶ 34). Cantrell practiced Satanism and "self-reported an extensive history of fighting with his former cellmates." (FAC ¶ 35). Cantrell had been rehoused because he had been involved in a fight with his previous cellmate during which Cantrell was reportedly the "aggressor." (FAC ¶ 34). After several weeks passed, Cantrell exhibited aggressive behavior towards plaintiff. (FAC ¶ 35). In addition, although plaintiff is a devout Christian, Cantrell "dominated the cell decor with pictures of satanic symbols and the atmosphere with satanic chanting." (FAC ¶ 35).

Plaintiff repeatedly asked to be separated from Cantrell after he "first exhibited aggressive behavior towards plaintiff," but defendant Udave (along with other "staff") "refused to separate plaintiff claiming he ([d]efendant Udave) would not do a cell move." (FAC ¶ 35). Plaintiff eventually found "a willing correctional staff who moved inmate Cantrell." (FAC ¶ 35).

    **2. Plaintiff's Inmate Appeals Related to the Cantrell Cell Assignment**

On December 29, 2015, plaintiff filed a CDCR 602 inmate appeal – assigned Log # CIM-C-15-03721 ("Grievance CIM-C-15-03721") – "challenging staff's continued failure to follow procedures regarding housing assignments[,]"

///

///

specifically Title 15, Cal. Code Regs., sections 3269[5] and 3269.1.[6]  (FAC ¶ 36; FAC Ex. B1).  Plaintiff complained "[s]taff has continued to house me with inmates who have been involved in recent physical altercations ([inmates] Cantrell & [] Adams), or inmates with a violent history or commitment offense and without regards for current regulations."  (FAC ¶ 36; FAC Ex. B2).  Plaintiff requested that his Central File housing assignment profile "be updated to alert staff to [e]nsure that all future housing assignments for [plaintiff] are based on [plaintiff's] individual case factors" including plaintiff's nonviolent history, non-serious commitment offense, lack of gang history, and "medical and disability status." (FAC ¶ 37; FAC Ex. B1-B2).

On December 30, 2015, defendant Padilla improperly screened out Grievance CIM-C-15-03721, inaccurately claiming that plaintiff had failed to first seek informal resolution through the required "CDCR-22 process."  (FAC ¶ 38; FAC Ex. B3).

On January 1, 2016, plaintiff resubmitted Grievance CIM-C-15-03721 after staff failed to respond to plaintiff's CDCR-22 informal request.  (FAC ¶ 39; see FAC Ex. B3).

On January 13, 2016, defendant Padilla again screened out Grievance CIM-C-15-03721, providing essentially three reasons for the rejection:  (1) "Your appeal concerns an anticipated action or decision.  Such issues are not appealable until they happen[]"; (2) "Per the last screening you were advised by the Facility Captain and the appeals office to send a form 22 with your safety concerns to the

///

---

[5]Title 15, CCR section 3269 governs inmate housing assignments and calls for inmates, upon their arrival at an institution, to be screened for an appropriate housing assignment based upon specified factors including the "[n]ature of the commitment offense[,]" "[e]nemies and victimization history[,]" and "[h]istory of in-cell assaults and/or violence."  15 CCR § 3269(a).

[6]See supra note 3.

Sergeant or Lieutenant[]"; and (3) plaintiff failed to demonstrate any "material adverse effect. . . ." (FAC ¶ 40; FAC Ex. B5).

Plaintiff resubmitted an appeal of Grievance CIM-C-15-03721, again claiming that his appeal had been "improperly screened out." (FAC ¶ 41). On January 27, 2016, defendant Padilla again screened out plaintiff's appeal essentially due to plaintiff's failure to demonstrate "a material adverse effect upon [plaintiff's] welfare." (FAC ¶ 41; FAC Ex. B6). More specifically, defendant Padilla wrote "[Title 15, Cal. Code Regs., section 3629] states in part 'Inmates shall accept Inmat[e]s Housing Assignments. . .' [and] 'Staff are to determine suitability for double cell housing based on documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.'" (FAC Ex. B6).

On February 9, 2016, plaintiff resubmitted his appeal of Grievance CIM-C-15-03721, and responded to the prior screening notice by stating, in part, "I don't know how to correct this appeal. Please meet with me to help me with this appeal." (FAC ¶ 42; FAC Ex. B6).

On February 11, 2016, plaintiff's appeal of Grievance CIM-C-15-03721 was screened out, again purportedly because plaintiff "failed to demonstrate a material adverse effect upon [his] welfare." (FAC ¶ 43; FAC Ex. B7). Defendant Padilla gave the following explanation for rejecting plaintiff's appeal:

> Your issue on the Form 22 dated [February 9, 2016] appears to be changing the original issue in your [CDCR] 602. [¶] If you are alleging that your medical condition (uncontrolled bleeding) makes you vulnerable to house [sic] with "certain inmates," then you must pursue single cell status with the approval of medical documentation to support such a claim. [¶] As far as your request to be informed of specific corrections, there are none, as you have failed to present a material adverse effect upon your welfare. Inmates are not allowed

9

[sic] pick and choose which inmates they preferred to house with. [¶]
It appears you are profiling other inmates based on your perceptions
of their past housing situations and appear to be discriminatory [sic]
which is against departmental policy. . . .

(FAC Ex. B7).

On an unspecified later date, plaintiff resubmitted an appeal of Grievance
CIM-C-15-03721. (FAC ¶ 45; FAC Ex. B7). On March 23, 2016, the appeal was
"canceled" as untimely. (FAC ¶ 45; FAC Ex. B8).

On February 22, 2016 – while petitioner was still seeking to proceed with
Grievance CIM-C-15-03721 as described above – plaintiff filed a CDCR 602
inmate appeal – assigned Log # CIM-C-16-00365 ("Grievance CIM-C-16-00365")
– essentially challenging the aforementioned "screen-outs" of Grievance CIM-C-
15-03721 and the assertedly improper processing of such grievance, and requesting
that Grievance CIM-C-15-03721 be processed, an investigation be conducted into
why it was improperly screened out, and monetary compensation. (FAC Exs. C1-
C2). Grievance CIM-C-16-00365 was ultimately denied on August 2, 2016. (FAX
Exs. C5-C6).

C.     **Claim Three – Section 1983 – Eighth and Fourteenth**
       **Amendments – Defendants John Doe #3, Padilla, Gill, and Udave**

       1.     **June 2016 Assignment of Inmate Peter Gallegos to**
              **Plaintiff's Cell ("Gallegos Cell Assignment")**

On June 6, 2016, – after plaintiff had been housed without a cellmate –
defendant John Doe #3 directed that a newly arrived inmate, Peter Gallegos, be
moved to plaintiff's cell. (FAC ¶ 50). Inmate Gallegos "has an extensive history
of in cell violence with his cellmates." (FAC ¶ 55). Gallegos "immediately
asserted his dominance in the cell demanding all available storage space and
suggesting that plaintiff's property could be stored under his bed." (FAC ¶ 50).
///

Plaintiff informed defendant Udave that plaintiff's cell did not have a storage locker for the bottom bunk where plaintiff was assigned, "and that the lack of adequate storage space was at issue." (FAC ¶ 51). Plaintiff also informed defendant Udave that inmate Gallegos "was exhibiting aggressive behavior towards plaintiff." (FAC ¶ 51). Defendant Udave did not attempt to locate a locker for plaintiff, nor did he make any attempt to address plaintiff's concerns of inmate Gallegos' aggression towards plaintiff. (FAC ¶ 52).

On July 13, 2016, at approximately 6:30 a.m., plaintiff was attacked by inmate Gallegos, and suffered "minor injury and excessive bleeding from an injury to his right forearm." (FAC ¶ 53). During breakfast release around 7:05 a.m., plaintiff and inmate Gallegos informed defendant Udave of the earlier "altercation," and medical attention was provided to both plaintiff and Gallegos. (FAC ¶ 54). Plaintiff and Gallegos both signed a written statement that neither harbored continued animosity towards the other and that both could remain on the same yard. (FAC ¶ 54). Inmate Gallegos was rehoused to another building. (FAC ¶ 54). After being rehoused, Gallegos was involved in a fight with his new cellmate, and was consequently transferred to administrative segregation. (FAC ¶ 55).

### 2. Plaintiff's Inmate Appeals Related to the Gallegos Cell Assignment

Claim Three of the First Amended Complaint recites no details regarding any inmate appeals related to the Gallegos Cell Assignment, and no exhibits pertaining to any such appeals are attached as exhibits to the First Amended Complaint. However, Claim Three alleges that defendants Padilla and Gill "improperly screened plaintiff's appeal" and that such "obstruct[ion] of plaintiff's ability to appeal his circumstances" enabled defendants John Doe #3 and Udave to "escape their responsibility" "to follow necessary regulations." (FAC ¶¶ 57, 58).

///

**D. Claim Four – Eighth and Fourteenth Amendments – Defendants John Doe #4, Padilla, Gill and Udave**

**1. July 2016 Assignment of Inmate Garcia to Plaintiff's Cell ("Garcia Cell Assignment")**

On the evening of July 14, 2016, "staff" – apparently John Doe #4 – assigned another new arrival, inmate Garcia, to plaintiff's cell. (FAC ¶¶ 60, 61). Inmate Garcia "self-reported six prior physical altercations with other inmates," three of which involved Garcia's cellmates, and all of which prompted disciplinary action against Garcia. (FAC ¶ 60).

**2. Plaintiff's Inmate Appeals Related to the Garcia Cell Assignment**

Claim Four of the First Amended Complaint recites no details regarding any inmate appeals related to the Garcia Cell Assignment, and no exhibits pertaining to any such appeals are attached as exhibits to the First Amended Complaint. However, similar to Claim Three, Claim Four alleges that defendants Padilla and Gill "improperly screened plaintiff's appeal" and that such "obstruct[ion] of plaintiff's ability to appeal his circumstances" enabled defendants John Doe #4 and Udave to "escape their responsibility" "to follow necessary regulations." (FAC ¶ 62).

**E. Claim Five – ADA – All Remaining Defendants**

In Claim Five, plaintiff alleges that the Remaining Defendants violated the ADA based upon the facts alleged in support of Claims One through Four.

**F. Claim Nine – Rehabilitation Act – All Remaining Defendants**

In Claim Nine, plaintiff alleges that the Remaining Defendants violated the Rehabilitation Act based upon the facts alleged in support of all of his other claims.

///

///

**III. LEGAL STANDARDS**

**A.    The Screening Requirement**

As plaintiff is a prisoner proceeding *in forma pauperis* on a complaint against a governmental defendant, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555). In addition, under Rule 10 of the Federal Rules of Civil Procedure ("Rule 10"), a complaint, among other things, must state the names of "all the parties" in the caption. Fed. R. Civ. P. 10(a).

Thus, to survive screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

Nordstrom v. Ryan, 762 F.3d 903, 908 (9th Cir. 2014) (citations and quotation marks omitted). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by exhibit," Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.), amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

///

14

*Pro se* complaints are interpreted liberally to give plaintiffs "the benefit of any doubt." Akhtar v. Mesa, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation and internal quotation marks omitted). If a *pro se* complaint is dismissed because it does not state a claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. Cafasso v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); Lopez v. Smith, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

## B.     Section 1983 Claims

To state a claim under Section 1983, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; West v. Atkins, 487 U.S. 42, 48 (1988) (citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. Iqbal, 556 U.S. at 676 (citing, *inter alia*, Monell v. Department of Social Services of the City of New York, 436 U.S. 658, 691 (1978)). Hence, a government official – whether subordinate or supervisor – may be held liable under Section 1983 only when his or her own actions have caused a constitutional deprivation. OSU Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing id.), cert. denied, 134 S. Ct. 70 (2013).

An individual "causes" a constitutional deprivation when he or she (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he [or she] is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury." Lacey v. Maricopa County, 693 F.3d 896, 915 (9th Cir.

///

2012) (en banc) (quoting <u>Johnson v. Duffy</u>, 588 F.2d 740, 743-44 (9th Cir. 1978)) (quotation marks omitted).

Similarly, a government official may be held individually liable under Section 1983 for acts taken in a supervisory capacity, but only when the supervisor's own misconduct caused an alleged constitutional deprivation. <u>See</u> <u>Iqbal</u>, 556 U.S. at 676, 677 ("Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."); <u>OSU Student Alliance</u>, 699 F.3d at 1069 (supervisor liable under Section 1983 only if "he . . . engaged in culpable action or inaction himself") (citing <u>id.</u> at 676). A supervisor may "cause" a constitutional deprivation for purposes of Section 1983 liability, if he or she (1) personally participated in or directed a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct. <u>See</u> <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011), <u>cert. denied</u>, 132 S. Ct. 2101 (2012).

Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

## C.  Eighth Amendment – Failure to Protect

The Eighth Amendment prohibits "the infliction of 'cruel and unusual punishments' on those convicted of crimes." <u>Wilson v. Seiter</u>, 501 U.S. 294, 296-97 (1991) (citation omitted). Under the Eighth Amendment, prison officials have a duty, among others, "to protect prisoners from violence at the hands of other prisoners." <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 (1994) (citations omitted); <u>Hearns v. Terhune</u>, 413 F.3d 1036, 1040 (9th Cir. 2005) (same) (citing <u>id.</u>). A prison official violates this duty when (1) a prison inmate is incarcerated under conditions that objectively pose a substantial risk of serious harm from another

16

inmate; and (2) the official responds with deliberate indifference – *i.e.* subjectively knows of the risk an inmate is facing and deliberately "disregards that risk by failing to take reasonable measures to abate it." See Farmer, 511 U.S. at 837, 847. To act with deliberate indifference, an official must be *subjectively* "aware of facts from which the inference could be drawn that [the inmate faces] a substantial risk of serious harm," and actually draw such an inference. See id. at 837. That an official "*should* have been aware" of a particular risk to an inmate, but was not, does not establish an Eighth Amendment violation "no matter how severe the risk." Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (citation and internal quotation marks omitted; emphasis in original), cert. denied, 135 S. Ct. 946 (2015). Mere negligence or civil recklessness does not violate the Eighth Amendment. See Farmer, 511 U.S. at 835-47 (citations omitted).

As noted above, and as especially true when, like here, a plaintiff seeks to hold an individual defendant personally liable for damages because another prisoner attacked him, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation requires a very individualized approach which accounts for the duties, discretion, and means of each defendant. Leer, 844 F.2d at 633-34 (citation omitted). The prisoner must set forth specific facts as to each individual defendant's deliberate indifference. Id. at 634. There must be an affirmative link between a defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976).

**D.** **Fourteenth Amendment – Due Process Violation Arising from Failure Properly to Process Grievances**

In general, a prison official's improper processing of an inmate's grievances, without more, cannot serve as a basis for Section 1983 liability under the Due Process Clause. See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004);

Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); see, e.g., Todd v. California Department of Corrections and Rehabilitation, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on allegations of improper "processing and handling of [] prison grievances," because there is no "'constitutional entitlement to a specific prison grievance procedure'") (citation omitted); Shallowhorn v. Molina, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citation omitted).

## E.    ADA and Rehabilitation Act

To state a claim for violation of Title II of the ADA or Section 504 of the Rehabilitation Act,[7] a plaintiff must show that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; (3) such exclusion or discrimination was by reason of his disability; and (4) (for the Rehabilitation Act claim) the public entity receives federal financial assistance. Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003). However, such provisions only afford causes of action against public entities (29 U.S.C. §§ 794, 794a; 42 U.S.C. § 12132; Miranda B. V. Kitzhaber, 328 F.3d 1181, 1187 (9th Cir. 2003)), and do not encompass public officials sued in their individual capacities. See Baribeau v. City of Minneapolis, 596 F.3d 465, 484 (8th Cir. 2010) ("Individuals in their personal capacities, however, are not subject to suit under Title II [of the ADA], which provides redress only from

---

[7]See Zukle v. Regents of University of California, 166 F.3d 1041, 1045 n.11 (9th Cir. 1999) ([Since] "[t]here is no significant difference in analysis of the rights and obligations created by the ADA and the Rehabilitation Act [citations] . . . courts have applied the same analysis to claims brought under both statutes. . . .") (citations and internal citations omitted).

public entities.") (citing <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc), <u>cert. dismissed</u>, 529 U.S. 1001 (2000)); <u>Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn</u>, 280 F.3d 98, 107 (2d Cir. 2001) ("Insofar as [plaintiff] is suing the individual defendants in their individual capacities, neither Title II of the ADA nor § 504 of the Rehabilitation Act provides for individual capacity suits against state officials.") (citations omitted); <u>Johnson v. County of Los Angeles</u>, 2015 WL 179773, *6 (C.D. Cal. Jan. 14, 2015) (ADA claims against defendants in their individual capacities not cognizable; collecting district court cases holding same); <u>A.B. ex rel. B.S. v. Adams-Arapahoe 28J School District</u>, 831 F. Supp. 2d 1226, 1254 (D. Colo. 2011) (no individual liability under either Title II of the ADA or the Rehabilitation Act); <u>cf.</u> <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities pursuant to Section 1983 to vindicate rights created by Title II of the ADA or section 504 of the Rehabilitation Act), <u>cert. denied</u>, 537 U.S. 1104 (2003).

## IV. DISCUSSION

The First Amended Complaint is deficient in, at least, the following respects:

First, the First Amended Complaint violates Rule 10 because it does not name all Remaining Defendants in the caption. Fed. R. Civ. P. 10(a); <u>see, e.g.</u>, <u>Ferdik v. Bonzelet</u>, 963 F.2d 1258, 1263 (9th Cir.), <u>as amended</u> (May 22, 1992) (affirming dismissal of action based on failure to comply with court order that complaint be amended to name all defendants in caption as required by Rule 10(a)), <u>cert. denied</u>, 506 U.S. 915 (1992).

Second, multiple paragraphs in the First Amended Complaint allege that one or more defendants and/or other CIM officials acted collectively to injure plaintiff. (<u>See, e.g.</u>, FAC ¶¶ 39, 48, 60, 67, 69, 70, 89). Such general and conclusory allegations against an indistinguishable group of defendants and others do not demonstrate a causal link between any *individual* defendant's conduct and an

alleged constitutional violation, and therefore are insufficient to state a viable claim against any of the defendants. See Baker v. McCollan, 443 U.S. 137, 142 (1979) ("[A] public official is liable under [Section] 1983 only 'if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'") (citation omitted; emphasis in original); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]"); Taylor, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). To state a viable Section 1983 individual capacity claim a plaintiff must, at a minimum, allege facts which demonstrate the specific acts each individual defendant did and how that individual's alleged misconduct specifically violated plaintiff's constitutional rights.

Third, the First Amended Complaint fails to state a viable ADA or Rehabilitation Act against any of the Remaining Defendants because individual capacity claims are not cognizable under such statutes. See Baribeau, 596 F.3d at 484 (ADA); Alsbrook, 184 F.3d at 1005 n.8 (ADA); Garcia, 280 F.3d at 107 (ADA & Rehabilitation Act); Johnson, 2015 WL 179773 at *6 (ADA); A.B. ex rel. B.S., 831 F. Supp. 2d at 1254 (ADA & Rehabilitation Act); cf. Vinson, 288 F.3d at 1156 (Section 1983 claims predicated on ADA and Rehabilitation Act).

Fourth, the First Amended Complaint fails to state viable Section 1983 individual capacity claims against any of the Remaining Defendants predicated upon the Fourteenth Amendment. Plaintiff's Fourteenth Amendment claims appear to be predicated upon the defendants' alleged improper screening and processing of plaintiff's inmate grievances and appeals. (FAC ¶¶ 26-27, 38, 40-41, 62 ). However, aside from defendants Gill and Padilla, none of the other Remaining Defendants are alleged to have played a role in screening or processing plaintiff's grievances. Even though defendants Gill and Padilla did participate in

processing one or more of plaintiff's grievances, a prison official's processing of an inmate's appeals, without more, cannot serve as a basis for Section 1983 liability.[8]  See Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640; Todd, 615 Fed. Appx. at 415; Shallowhorn, 572 Fed. Appx. at 547.

Fifth, although a closer call, the First Amended Complaint currently fails to state a viable Eighth Amendment failure to protect individual capacity claim against the Remaining Defendants.

Defendants Gill and Padilla appear to have played no role in the housing assignments of plaintiff or his cellmates and accordingly the First Amended Complaint does not plausibly allege that either such defendant is liable for failing to protect plaintiff under the Eighth Amendment.

Claim One – which relates to the Adams Cell Assignment and is the only Eighth Amendment claim against defendants Joe Doe #1 and Ryles – also fails adequately to state such a claim against such defendants.  For example, the First Amended Complaint does not plausibly allege that placing Adams in plaintiff's cell objectively posed a *substantial* risk of serious harm to plaintiff, or if so, that Joe Doe #1 or Ryles actually knew as much.  Plaintiff's conclusory allegations that it was "well known" among unspecified "staff" that Adams had "aggressive sexual behavior," or that Adams had previously been in two fights, do not *show* that defendants Joe Doe #1 and Ryles were among those who were aware of such facts,

---

[8]While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Complaint fails to state such a claim because plaintiff does not plausibly allege that any defendant *actually failed* to process his grievances, that an actual injury resulted from any failure to process plaintiff's grievances or that any such conduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim."  Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

much less that they had any basis for inferring therefrom that Adams was likely to attack plaintiff if the two inmates were housed together. Likewise, plaintiff's conclusory allegations that defendant Ryles "deliberately" housed plaintiff with Adams "knowing that [Ryles'] deliberate failure to properly screen potential cellmate housing assignments could lead to violence between cellmates, and, failing to consider plaintiff's medical condition which places plaintiff in extreme danger of uncontrollable hemorrhaging" (FAC ¶ 30) also fail plausibly to make any such showing. Indeed, allegations that defendant Ryles "repeatedly" told Adams to "[j]ust [not] talk to [plaintiff]" in response to Adams' complaints about being assigned to plaintiff's cell, and that Ryles angrily ordered plaintiff to return to his cell when plaintiff, likewise, refused to accept Adams as a cellmate and said Adams was his "enemy" and that he feared for his safety, suggests that Ryles, at most, believed plaintiff and Adams were merely upset about their housing assignment, not that Adams necessarily posed any particular threat to plaintiff's safety. While it is also possible that Ryles could have interpreted the inmates' complaints as indicating a potential for tension between Adams and plaintiff, such possibility is insufficient to *show* that defendant Ryles subjectively knew that housing the two inmates together created a substantial risk of serious harm to plaintiff. Even if Ryles could have suspected as much under the circumstances, such a suspicion alone does not plausibly show that defendant Ryles responded with deliberate indifference under the circumstances. See, e.g., Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (prison officials "must have more than a mere suspicion that an attack will occur" before they are obligated to take steps to prevent an inmate assault) (citations and internal quotation marks omitted).

Moreover, plaintiff does not plausibly allege that it was within the scope of defendant Ryles' duties and responsibilities to re-house Adams after the inmate had just been moved from another building by an entirely different official (*i.e.*, John Doe #1), or that defendant Ryles had any obligation to question that decision

under the circumstances.

Claim Two – which relates to the Cantrell Cell Assignment, is the only Eighth Amendment failure to protect claim against defendant Joe Doe #2, and also names defendant Udave – also fails to state a claim against either such Remaining Defendant. For example, plaintiff's conclusory allegations that inmate Cantrell had "an extensive history of fighting with his former cellmates," had been the aggressor in a fight with his prior cellmate, and had exhibited unspecified "aggressive behavior" towards plaintiff (FAC ¶¶ 34-35), do not plausibly suggest that defendants John Doe #2 or Udave were subjectively aware of such facts, much less actually drew an inference therefrom that Cantrell posed a unique threat to plaintiff beyond that which might reasonably be expected in a typical prison setting. See generally Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."); Berg, 794 F.2d at 461 (observing prison environment is "at best, tense[,]" "sometimes explosive," and "always potentially dangerous").

Moreover, plaintiff does not plausibly allege that inmate cell assignment in general was within at least defendant Udave's duties, discretion, or means, or if so, that Udave subjectively knew plaintiff faced a substantial risk of serious harm on any specific occasion when the defendant allegedly "refused" plaintiff's request for a "cell move," or that by denying any particular request Udave failed to take reasonable measures to avoid any such risk at a particular moment in time. Neither does the First Amended Complaint plausibly allege that plaintiff suffered any injury at all due to any misconduct by defendants John Doe #2 or Udave in connection with the Cantrell Cell Assignment (i.e., plaintiff does not allege that Cantrell ever attacked him while the two inmates were in the same cell). Conclusory allegations that Cantrell "exhibited aggressive behavior" at unspecified times or frequency and "dominated the cell decor with pictures of satanic symbols

23

and the atmosphere with satanic chanting" while plaintiff is a devout Christian (FAC ¶ 35) do not even remotely suggest that plaintiff was denied the "the minimal civilized measure of life's necessities" that would be an Eighth Amendment violation.

Claim Three – which relates to the Gallegos Cell Assignment, is the only Eighth Amendment failure to protect claim against defendant Joe Doe #3, and also names defendant Udave – also fails to state a claim against either such Remaining Defendant. The First Amended Complaint does not plausibly allege that either such defendant had any knowledge of Gallegos' alleged "extensive history" of violence with prior cellmates, or subjectively believed that Gallegos posed a substantial risk of serious harm simply because plaintiff complained to Udave – just like plaintiff had with respect to the prior inmate assigned to his cell – that Gallegos was exhibiting unspecified "aggressive behavior towards plaintiff." (FAC ¶ 51). In any event, allegations that defendant Udave did not "attempt to locate a locker for plaintiff" or address plaintiffs' concerns about Gallegos' alleged aggression, at most, suggest that defendant Udave acted negligently, which, again, is insufficient to establish deliberate indifference. <u>Farmer</u>, 511 U.S. at 835 (citation omitted).

Claim Three also fails to state a viable Eighth Amendment claim against defendants John Doe #3 or Udave predicated on the July 13, 2016 "altercation" between plaintiff and Gallegos. Plaintiff's allegations do not plausibly suggest that Gallegos posed a sufficiently substantial risk of serious harm to plaintiff in connection with such altercation given that both inmates subsequently stated in writing that neither continued to harbor animosity towards the other, and that both thought they could remain together on the same yard. (FAC ¶ 54). Furthermore, plaintiff's allegations do not establish that defendants John Doe #3 or Udave responded with deliberate indifference under the circumstances because Udave or some other official took reasonable measures to abate the harm (<i>i.e.</i>, obtained

24

medical attention for both inmates and rehoused Gallegos in a different building after the altercation). (FAC ¶ 54).

Claim Four – which relates to the Garcia Cell Assignment, is the only Eighth Amendment failure to protect claim against defendant Joe Doe #4, and also names defendant Udave – also fails to state a claim against either such Remaining Defendant. The First Amended Complaint does not plausibly allege that either such defendant had any knowledge of Garcia's prior physical altercations with other inmates, or subjectively believed that Garcia posed a substantial risk of serious harm to plaintiff. Indeed, nothing in the First Amended Complaint links defendant Udave to the Garcia Cell Assignment, much less plausibly suggests that he acted with deliberate indifference under the circumstances.

Sixth, the remaining paragraphs in the First Amended Complaint relating to the federal claims are prolix (*i.e.*, unnecessarily long, wordy, and tedious), at times confusing and incomprehensible, and patently fail to frame plaintiff's claims with the simplicity, conciseness, and clarity required by Rule 8. Most of the allegations are replete with unnecessary background information as well as duplicative, irrelevant, and conclusory factual and legal assertions. (FAC ¶¶ 1-3, 6-8, 10, 13-15, 44, 46, 64-66, 69-70, 88, 95-96). Conclusory allegations addressed to specific claims ultimately amount to, at most, the "formulaic recitation of the elements" of a civil rights cause of action. (FAC ¶¶ 30-31, 47, 56-58, 61-62, 68-70, 79, 84, 89-90, 94). On the whole, such allegations do nothing to plausibly connect any particular act or incident to a specific legal claim against any individual defendant, and consequently are insufficient to state any viable Section 1983 claim. See Pena v. Gardner, 976 F.2d 469, 471 (9th Cir. 1992) (Vague and conclusory allegations of official participation in civil rights violations not sufficient to state a claim under Section 1983) (citation omitted); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations which amount to nothing more than a "formulaic recitation of the elements" insufficient under Rule 8 pleading standard) (citations omitted); Knapp

v. Hogan, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule 8's "short and plain statement" requirement "warrant dismissal") (citations omitted), cert. denied, 135 S. Ct. 57 (2014). To confuse matters further, the first paragraphs of all claims except Claim One sweepingly incorporate most or all preceding allegations from the First Amended Complaint, and thus each successive claim effectively ends up including exponentially more allegations, until the last claim technically asserts every claim against every defendant predicated on every fact alleged in the entire First Amended Complaint. (FAC ¶¶ 82, 49, 59, 63, 71, 80, 85, 91).

Finally, the Court finds it would not be appropriate to exercise supplemental jurisdiction over plaintiff's state claims in the instant case where the First Amended Complaint fails to state any viable claim over which this Court has original subject matter jurisdiction. See 28 U.S.C. § 1367(c)(3) (district court may decline supplemental jurisdiction over claim where "court has dismissed all claims over which it has original jurisdiction"); Carlsbad Technology, Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009) (recognizing district court's discretion to decide whether to exercise supplemental jurisdiction over state-law claims after district court dismissed "every claim over which it had original jurisdiction") (citations omitted); Lacey, 693 F.3d at 940 (district court must affirmatively indicate that it has exercised its discretion to decide whether to keep state claims in federal court after all federal claims have been dismissed); see, e.g., Acri v. Varian Associates, Inc., 114 F.3d 999, 1001 (9th Cir. 1997) (en banc) ("[I]n the usual case in which all federal-law claims are eliminated before trial, the balance of factors . . . will point toward declining to exercise jurisdiction over the remaining state-law claims.'") (citation and quotation marks omitted).

///

///

# V.     ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1.      The Court adopts the First Screening Order.

2.      The Court adopts the Second Screening Order to the extent it finds that the First Amended Complaint fails to state a claim against the CDCR, the CIM Warden, and Dr. Jaime, construes plaintiff's failure to file a response to the Second Screening Order and a Second Amended Complaint as an election to proceed solely as against defendants Gill, Ryles, Padilla, Udave and John Does #1-#4 in their individual capacities, and dismisses this action without prejudice as against the CDCR, the CIM Warden and Dr. Jaime.

3.      The Court declines to adopt the Second Screening Order to the extent it finds that the First Amended Complaint adequately states a claim against the Remaining Defendants and concludes, upon its own screening of the Second Amended Complaint that dismissal of all claims against the Remaining Defendants with leave to amend is appropriate.

4.      The First Amended Complaint as against the Remaining Defendants is dismissed with leave to amend.  If plaintiff intends to pursue this matter, he shall file a Second Amended Complaint within twenty (20) days of the date of this Order which cures the pleading defects set forth herein.[9]  The Clerk is directed to provide

---

[9]Any Second Amended Complaint must:  (a) be labeled "Second Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Original Complaint or First Amended Complaint – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1)); (e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each individual defendant did and how that individual's conduct specifically violated plaintiff's civil rights; (g) state the names of all defendants in the caption (Fed. R. Civ. P. 10(a)); and
(h) not add defendants or claims without leave of court, cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that
(continued...)

plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Second Amended Complaint if he elects to proceed in that fashion.

5.     In the event plaintiff elects not to proceed with this action, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

**6.     Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a Second Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with the Court's Order.**

7.     The Motion to Dismiss is moot and is denied as such without prejudice.

IT IS SO ORDERED.

DATED: August 22, 2017

_____
HONORABLE CORMAC J. CARNEY
UNITED STATES DISTRICT JUDGE

---

[9](...continued)
alleges unrelated violations against different defendants).