UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAUL ROBERTS, | Case No. EDCV 16-1929 CJC(JC) |
| Plaintiff, | |
| v. | ORDER DISMISSING SECOND AMENDED COMPLAINT WITH LEAVE TO AMEND |
| CALIFORNIA DEPARTMENT OF CORRECTIONS AND REHABILITATION, et al., | |
| Defendants. | |

## I.     BACKGROUND AND SUMMARY

On September 9, 2016 and October 11, 2016, plaintiff Paul Roberts, who is in custody at the California Institute for Men ("CIM"), is proceeding *pro se*, and has been granted leave to proceed without prepayment of the filing fee ("IFP"), filed essentially duplicate copies of a Civil Rights Complaint ("Original Complaint") pursuant to 42 U.S.C. § 1983 ("Section 1983") against the California Department of Corrections and Rehabilitation ("CDCR") and multiple CIM officials.

On October 27, 2016, the previously assigned United States Magistrate Judge screened and dismissed the Original Complaint and granted plaintiff leave to file a First Amended Complaint ("First Screening Order").

On November 10, 2016, plaintiff filed a First Amended Complaint asserting multiple claims against the CDCR and ten individuals associated with the CIM: CIM Appeals Coordinators Gill and Padilla, CIM Correctional Officers Ryles and Udave, four unnamed CIM officials identified only as John Does 1-4, the CIM Warden, and Dr. Jaime. Plaintiff sued the ten individuals in their individual capacities only, and sought injunctive and monetary relief from all defendants.

In an Order dated November 18, 2016 ("Second Screening Order"), the Magistrate Judge screened the First Amended Complaint, found that it did not state viable claims against the CDCR, the CIM Warden, and Dr. Jaime, but that it did "state a federal civil rights claim under the Eighth Amendment against defendants Gill, Ryles, Padilla, Udave, and the Doe defendants in their individual capacities only," advised plaintiff that he need not respond to the Second Screening Order if he wished to pursue the action solely against defendants Gill, Ryles, Padilla, and Udave in their individual capacities, but directed plaintiff to file a Second Amended Complaint within thirty days (*i.e.*, by December 19, 2016) if he wished to pursue the action against any of the other named defendants. Plaintiff did not file a response to the Second Screening Order and did not then file a Second Amended Complaint.

On August 22, 2017, this Court (1) agreed with and adopted the First Screening Order and found that the Magistrate Judge properly dismissed the Original Complaint with leave to amend for the reasons discussed therein; (2) agreed with and adopted the Second Screening Order to the extent it found that the First Amended Complaint failed to state a claim against the CDCR, the CIM Warden, and Dr. Jaime, construed plaintiff's failure to file a response to the Second Screening Order and a Second Amended Complaint as an election to proceed solely as against defendants Gill, Ryles, Padilla, Udave and John Does 1-4 in their individual capacities, and dismissed this action without prejudice against the CDCR, the CIM Warden and Dr. Jaime; and (3) disagreed with and

declined to adopt the Second Screening Order to the extent it found that the First
Amended Complaint adequately stated a claim against defendants Gill, Ryles,
Padilla, Udave and John Does 1-4, concluded that plaintiff had failed to state a
claim against such defendants and dismissed all claims against such defendants
with leave to amend.

On September 11, 2017, plaintiff filed the currently operative Second
Amended Complaint ("SAC") with attached exhibits ("SAC Ex."), asserting claims
against the CDCR, Gill, Padilla, Ryles, Udave, and John Does 1-3.  (SAC at 1, 3-5,
8-10).  Very liberally construed, the Second Amended Complaint appears to assert
Section 1983 claims predicated on violations of the Eighth and Fourteenth
Amendments and a claim for violation of Title II of the Americans with
Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, *et seq.*, stemming from defendants'
alleged failure adequately to protect plaintiff from being housed with dangerous
inmates and/or failure properly to process plaintiff's grievances regarding the
same.  Plaintiff sues the individuals defendants in their individual and official
capacities,[1] and seeks injunctive and monetary relief from all defendants.  (SAC at
3-5; SAC ¶ 72).

## II.     THE SECOND AMENDED COMPLAINT

Very liberally construed, the Second Amended Complaint and exhibits
reflect, in pertinent part, the following:

Plaintiff is a 56-year-old mobility impaired inmate who suffers from an
"array of medical issues," and has been prescribed "Warfarin," a medication that
///

---

[1]While plaintiff checked boxes in the preprinted portion of the Second Amended
Complaint indicating that he was suing the individual defendants in their individual capacities
only, in the last paragraph of the typewritten portion of the Second Amended Complaint plaintiff
states that he is seeking relief from "all defendants, in their official and individual capacit[ies.]"
(Compare SAC at 3-5 with SAC ¶ 72).

3

can cause "uncontrollable bleeding." (SAC ¶ 23). Plaintiff has no history of aggressive behavior. (SAC ¶ 35).

**A.    April 2014 Assignment of Inmate Ricky Adams to Plaintiff's Cell ("Adams Cell Assignment") – Defendants John Doe 1, Ryles and Gill**

**1.    The Adams Cell Assignment**

Ricky Adams was an approximately 25 year old inmate who had a documented history of aggressive sexual behavior and assaults upon other inmates including his own cellmates. (SAC ¶ 28). Adams was previously involved in several recent cell fights, including one during which he assaulted his previous cellmate; Adams was rehoused after each fight "according to policy." (SAC ¶ 29). On April 15, 2014, Adams "brutally assaulted" inmate Munson – who suffered "significant injury" and needed to receive "immediate treatment by medical staff." (SAC ¶ 30). After the assault on Munson, Adams was rehoused but not disciplined. (SAC ¶ 30).

At approximately 10:00 p.m. on April 15, 2014, defendant John Doe 1 assigned Adams to be housed with plaintiff. (SAC ¶ 27; SAC Ex. A1). Defendant Ryles escorted Adams to plaintiff's cell. (SAC ¶ 27).

When Adams first approached the cell, he said to plaintiff "If your [sic] a sex offender, tell me now because I don't live with sex offenders and if I find out after I move in your [sic] going to have a problem." (SAC Ex. A1, A2). Plaintiff "advised Adams that [he] did in fact have a past [sex] offense [from] 35 years ago[,]" whereupon Adams returned to the control office and advised defendant Ryles that Adams and plaintiff "could not safely live together" and that Adams "would not accept the housing assignment." (SAC Ex. A2). Inmate Adams informed defendant Ryles that Adams had "extreme animosity towards plaintiff," did not want to be housed with plaintiff, and would rather be housed "with a particular homosexual." (SAC ¶ 32). After about five minutes, plaintiff

approached the control office and overheard defendant Ryles "repeatedly state to Adams 'Just don't talk to the mother f--ker.'"  (SAC Ex. A2).

Plaintiff also said that he refused to accept Adams as a cellmate, and informed defendant Ryles that Adams was plaintiff's enemy, "that plaintiff was in fear of being assaulted by Adams given Adams' extensive history of violence, and that staff had failed to acknowledge several necessary factors that would exclude inmate Adams from being housed with plaintiff."  (SAC ¶ 31; SAC Ex. A2).  Defendant Ryles then told plaintiff, "Get back in your f--king cell, this is my house not yours."  (SAC ¶ 33; SAC Ex. A2).  All staff have complete access to [an] inmate's prison h[i]story, and defendant Ryles was aware of the cell fight inmate Adams was involved in, which necessitated his cell move. . . ."  (SAC ¶ 36).  Plaintiff felt "intimidated" by defendant Ryles and "feared further attempts to refuse inmate Adams."  (SAC ¶ 33).  After several minutes, Adams entered the cell with plaintiff, and the cell door was closed.  (SAC ¶ 33).  That evening plaintiff was sexually assaulted by Adams.  (SAC ¶ 34).  Plaintiff was frightened and unable to sleep all night.  (SAC ¶ 34).

The following day, after being released for morning meal, plaintiff refused to reenter the cell with inmate Adams and reported to the facility sergeant that Adams had sexually assaulted him.  (SAC ¶ 35).  Adams was immediately rehoused, but no disciplinary action was taken against Adams, and "no interview was conducted regarding plaintiff's allegations."  (SAC ¶ 35).

## 2. Plaintiff's Inmate Appeals Related to the Adams Cell Assignment

On April 21, 2014, plaintiff filed a CDCR 602 Inmate/Parolee Appeal form ("CDCR 602"), which was assigned Log # CIM-C-14-01471 ("Grievance CIM-C-14-01471"), and in which plaintiff made a "staff complaint" that defendant Ryles had failed to comply with Title 15, California Code of Regulations ("Cal.
///

Code Regs." or "CCR"), section 3269.1,[2] and had "deliberately placed plaintiff's life in danger by forcing plaintiff to house with inmate Adams, knowing that Adams was violent and that inmate Adams [had] threatened plaintiff prior to entering the cell with plaintiff." (SAC ¶ 36; <u>see</u> SAC Exs. A1, A2, A4).

On April 28, 2014, defendant Gill screened out Grievance CIM-C-14-01471, stating in part "[y]our appeal makes a general allegation, but fails to state facts or specify an act or decision consistent with the allegation." (SAC Ex. A4). Defendant Gill also stated "Please be advised your . . . [CDCR 602] was reviewed as a Staff Complaint with allegations of Staff Misconduct and was forwarded to the Hiring Authority for determination, which was subsequently re-categorized as a routine appeal." (SAC Ex. A4).

On or about May 1, 2014, plaintiff filed an appeal of Grievance CIM-C-14-01471. (SAC Ex. A4). The appeal was screened out by defendant Gill because "[plaintiff] failed to demonstrate a material adverse effect upon [his] welfare." (SAC Ex. A5). In the screening notice, defendant Gill also stated "[i]nmate Adams was bed moved from your cell without incident." (SAC Ex. A5).

**B.     December 2015 Assignment of Inmate Cantrell to Plaintiff's Cell ("Cantrell Cell Assignment") – Defendants John Doe 2, Padilla and Udave**

**1.     The Cantrell Cell Assignment**

In or about December 2015, defendant John Doe 2, supervisory staff, directed that inmate Cantrell be moved to plaintiff's cell. (SAC ¶ 42). Cantrell had an extensive history of being aggressive with cellmates, which was

///

---

[2]Title 15, CCR section 3269.1 provides for "Integrated Housing," prohibits an inmate's race from being used as a primary determining factor in housing an institution's male population, and calls for inmate housing assignments to be made on the basis of available documentation and individual case factors including "[c]ommitment offense[,]" and "[d]isciplinary history[.]"

documented in disciplinary reports. (SAC ¶ 42). Cantrell was rehoused because he was involved in a fight with his prior cellmate. (SAC ¶ 42).

Almost immediately, Cantrell exhibited aggressive behavior towards plaintiff. (SAC ¶ 43). Plaintiff is a devout Christian, but Cantrell practiced Satanism and was offended by plaintiff's Christianity. (SAC ¶ 43). Cantrell bragged to plaintiff about his extensive history of fighting with his former cellmates. (SAC ¶ 43). Cantrell displayed satanic symbols and practiced satanic rituals in the cell. (SAC ¶ 43).

Over several weeks plaintiff repeatedly asked to be separated from Cantrell. (SAC ¶ 43). Defendant Udave was assigned as the building floor officer, and was the primary officer charged with facilitating cell moves as part of his official duties. (SAC ¶ 43). Each time plaintiff asked defendant Udave, the defendant "refused to take any action to separate plaintiff and Cantrell" and claimed that he did not do cell moves. (SAC ¶ 43). "Inmate Cantrell was subsequently rehoused by another staff." (SAC ¶ 43).

## 2. Plaintiff's Inmate Appeals Related to the Cantrell Cell Assignment

On December 29, 2015, plaintiff filed a CDCR 602 inmate appeal – assigned Log # CIM-C-15-03721 ("Grievance CIM-C-15-03721") – "challenging staff's continued failure to follow policy and procedures regarding housing assignments[,]" specifically Title 15, Cal. Code Regs., sections 3269[3] and 3269.1.[4] (SAC ¶ 44; SAC Ex. B1). Plaintiff complained "[s]taff has continued to house me

---

[3]Title 15, CCR section 3269 ("Section 3269") governs inmate housing assignments and calls for inmates, upon their arrival at an institution, to be screened for an appropriate housing assignment based upon specified factors including the "[n]ature of the commitment offense[,]" "[e]nemies and victimization history[,]" and "[h]istory of in-cell assaults and/or violence." 15 CCR § 3269(a).

[4]See supra note 2.

with inmates who have been involved in recent physical altercations ([inmates] Cantrell & [] Adams), or inmates with a violent history or commitment offense and without regards for current regulations." (SAC ¶ 36; SAC Ex. B2). Plaintiff requested that his Central File housing assignment profile "be updated to alert staff to [e]nsure that all future housing assignments for [plaintiff] are based on [plaintiff's] individual case factors" including plaintiff's nonviolent history, non-serious commitment offense, lack of disciplinary segregation, lack of gang history, and "medical and disability status." (SAC ¶ 45; SAC Ex. B1-B2).

On December 30, 2015, defendant Padilla improperly and without merit screened out Grievance CIM-C-15-03721, claiming in error that plaintiff was required to first seek an informal response "through the CDCR-22 process." (SAC ¶ 46; SAC Ex. B3).

On January 6, 2016, plaintiff resubmitted Grievance CIM-C-15-03721 after staff failed to respond to plaintiff's informal request. (SAC ¶ 47; see SAC Ex. B3).

On January 13, 2016, defendant Padilla again "improperly, and without merit" screened out Grievance CIM-C-15-03721, providing essentially three reasons for the rejection: (1) "Your appeal concerns an anticipated action or decision. Such issues are not appealable until they happen[]"; (2) "Per the last screening you were advised by the Facility Captain and the appeals office to send a form 22 with your safety concerns to the Sergeant or Lieutenant[]"; and (3) plaintiff had failed to demonstrate any "material adverse effect. . . ." (SAC ¶ 40; SAC Ex. B5).

Plaintiff resubmitted an appeal of Grievance CIM-C-15-03721, again claiming that his appeal had been "improperly screened out." (SAC ¶ 49). On January 27, 2016, defendant Padilla again screened out plaintiff's appeal claiming, in error, that plaintiff had failed to demonstrate "a material adverse effect upon [plaintiff's] welfare." (SAC ¶ 49; SAC Ex. B6). More specifically, defendant Padilla wrote "[Title 15, Cal. Code Regs., section 3629] states in part 'Inmates

shall accept Inmat[e]s Housing Assignments. . .' [and] 'Staff are to determine suitability for double cell housing based on documentation and individual case factors. Inmates are not entitled to single cell assignment, housing location of choice, or to a cellmate of their choice.'" (SAC Ex. B6).

On February 9, 2016, plaintiff resubmitted his appeal of Grievance CIM-C-15-03721, and responded to the prior screening notice by stating, in part, "I don't know how to correct this appeal. Please meet with me to help me with this appeal." (SAC ¶ 49; SAC Ex. B6).

On February 11, 2016, plaintiff's appeal of Grievance CIM-C-15-03721 was screened out, again purportedly because plaintiff "failed to demonstrate a material adverse effect upon [his] welfare[.]" (SAC ¶ 50; SAC Ex. B7). Defendant Padilla gave the following explanation for rejecting plaintiff's appeal:

> Your issue on the Form 22 dated [February 9, 2016] appears to
> be changing the original issue in your [CDCR] 602. [¶] If you are
> alleging that your medical condition (uncontrolled bleeding) makes
> you vulnerable to house [sic] with "certain inmates," then you must
> pursue single cell status with the approval of medical documentation
> to support such a claim. [¶] As far as your request to be informed of
> specific corrections, there are none, as you have failed to present a
> material adverse effect upon your welfare. Inmates are not allowed
> [sic] pick and choose which inmates they prefer to house with. [¶] It
> appears you are profiling other inmates based on your perceptions of
> their past housing situations and appear to be discriminatory [sic]
> which is against departmental policy. . . .

(SAC Ex. B7). Defendant Padilla "knew, or should have known of his responsibility and obligation to instruct plaintiff on the specific corrections necessary for the appeal to be accepted. 'There are none' is not an appropriate response, nor is such a response authorized by regulations." (SAC ¶ 50) (citing

15 CCR § 3084.5(b)(3)).

On an unspecified later date, plaintiff resubmitted an appeal of Grievance CIM-C-15-03721. (SAC ¶ 52; SAC Ex. B7). On March 23, 2016, the appeal was "canceled" as untimely, without merit. (SAC ¶ 52; SAC Ex. B8).

On February 22, 2016 – while plaintiff was still seeking to proceed with Grievance CIM-C-15-03721 as described above – plaintiff filed a CDCR 602 inmate appeal – assigned Log # CIM-C-16-00365 ("Grievance CIM-C-16-00365") – essentially challenging the aforementioned "screen-outs" of Grievance CIM-C-15-03721 and the assertedly improper processing of such grievance, and requesting that Grievance CIM-C-15-03721 be processed, an investigation be conducted into why it was improperly screened out, and monetary compensation. (SAC Exs. C1-C2). Grievance CIM-C-16-00365 was ultimately denied on August 2, 2016. (SAC Exs. C5-C6).

**C.    June 2016 Assignment of Inmate Peter Gallegos to Plaintiff's Cell ("Gallegos Cell Assignment") – Defendants John Doe 3, Padilla, Gill, and Udave**

**1.    The Gallegos Cell Assignment**

On June 6, 2016, defendant John Doe 3 directed that a newly arrived inmate, Peter Gallegos, be housed with plaintiff. (SAC ¶ 55). Inmate Gallegos, approximately 30 years old, "has an extensive documented history of in cell violence with his cellmates." (SAC ¶¶ 55, 57). Gallegos "immediately asserted his dominance in the cell, which is characteristic of [historically] ag[g]ressive inmates," demanded all available storage space for himself, and told plaintiff that he could store property under his bed. (SAC ¶¶ 55, 56).

Plaintiff immediately informed defendant Udave that plaintiff's cell was without a storage locker for the bottom bunk where plaintiff was assigned, "and that the absence of a locker for plaintiff was causing ag[g]ressive behavior by Inmate Gallegos." (SAC ¶ 56). Plaintiff also informed defendant Udave several

times that inmate Gallegos "was exhibiting ag[g]ressive behavior towards plaintiff." (SAC ¶ 56).

On June 13, 2016, at approximately 6:30 a.m., plaintiff was attacked by inmate Gallegos, and suffered "injury causing excessive bleeding from an injury to his right forearm[,]" and "also suffered bruising and abrasions to his face, arms, and body." (SAC ¶ 57). During breakfast release at approximately 7:05 a.m., plaintiff informed defendant Udave of the assault and medical attention was provided. (SAC ¶ 57). Inmate Gallegos was rehoused to another building. (SAC ¶ 57). The next day Gallegos was involved in a fight with his new cellmate, and was consequently transferred to administrative segregation. (SAC ¶ 57).

## 2. Plaintiff's Inmate Appeals Related to the Gallegos Cell Assignment

The Second Amended Complaint recites no details regarding any inmate appeals related to the Gallegos Cell Assignment, and no exhibits pertaining to any such appeals are attached as exhibits to the Second Amended Complaint. However, the Second Amended Complaint alleges, in pertinent part, that defendant John Doe 3 "subjected plaintiff to extreme danger" by "deliberately housing plaintiff with an inmate having an extensive documented history of ag[g]ressive behavior, and knowing that the deliberate failure to properly screen potential cell partners for proper housing assignments was likely to lead to violence upon plaintiff," and that defendant John Doe 3's "failure to consider plaintiff's medical condition placed plaintiff in significant risk of injury and caused plaintiff to suffer harm by an inmate with a propensity to violence." (SAC ¶ 58). Plaintiff also alleges that defendants John Doe 3 and Udave "refused to follow required regulations and failed to perform their legally required duties to protect plaintiff," and that defendants Gill and Padilla "deliberately acted to

///

obstruct plaintiffs' access to appeal his circumstances caused by defendant John Doe 3 and Udave's failure to protect him." (SAC ¶ 59).

## III. LEGAL STANDARDS

### A. The Screening Requirement

As plaintiff is a prisoner proceeding IFP on a civil rights complaint against governmental defendants, the Court must screen the Complaint, and is required to dismiss the case at any time it concludes the action is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. §§ 1915(e)(2)(B), 1915A; 42 U.S.C. § 1997e(c); Byrd v. Phoenix Police Department, 885 F.3d 639, 641 (9th Cir. 2018) (citations omitted).

When screening a complaint to determine whether it states any claim that is viable (*i.e.*, capable of succeeding), the Court applies the same standard as it would when evaluating a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). See Rosati v. Igbinoso, 791 F.3d 1037, 1039 (9th Cir. 2015) (citation omitted). Rule 12(b)(6), in turn, is read in conjunction with Rule 8(a) of the Federal Rules of Civil Procedure. Zixiang Li v. Kerry, 710 F.3d 995, 998-99 (9th Cir. 2013). Under Rule 8, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While Rule 8 does not require detailed factual allegations, at a minimum a complaint must allege enough specific facts to provide *both* "fair notice" of the particular claim being asserted *and* "the grounds upon which [that claim] rests." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 & n.3 (2007) (citation and quotation marks omitted); see also Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (Rule 8 pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing id. at 555).

To avoid dismissal on screening, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its

12

face." Byrd, 885 F.3d at 642 (citations omitted); see also Johnson v. City of Shelby, Mississippi, 135 S. Ct. 346, 347 (2014) (per curiam) (Twombly and Iqbal instruct that plaintiff "must plead facts sufficient to show that [plaintiff's] claim has substantive plausibility"). A claim is "plausible" when the facts alleged in the complaint would support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. Iqbal, 556 U.S. at 678 (citation omitted); see also Gauvin v. Trombatore, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (complaint "must allege the basis of [plaintiff's] claim against *each* defendant" to satisfy Rule 8 pleading requirements) (emphasis added); Chappell v. Newbarth, 2009 WL 1211372, *3 (E.D. Cal. May 1, 2009) ("[A] complaint must put each defendant on notice of Plaintiff's claims against him or her, and their factual basis.") (citing Austin v. Terhune, 367 F.3d 1167, 1171 (9th Cir. 2004)). Allegations that are "merely consistent with" a defendant's liability, or reflect only "the mere possibility of misconduct" do not "show[] that the pleader is entitled to relief" (as required by Fed. R. Civ. P. 8(a)(2)), and thus are insufficient to state a claim that is "plausible on its face." Iqbal, 556 U.S. at 678-79 (citations and quotation marks omitted).

At this preliminary stage, "well-pleaded factual allegations" in a complaint are assumed true, while "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusion[s] couched as a factual allegation" are not. Id. (citation and quotation marks omitted); Jackson v. Barnes, 749 F.3d 755, 763 (9th Cir. 2014) ("mere legal conclusions 'are not entitled to the assumption of truth'") (quoting id.), cert. denied, 135 S. Ct. 980 (2015). In addition, the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," Steckman v. Hart Brewing, Inc., 143 F.3d 1293, 1295-96 (9th Cir. 1998) (citation omitted), and "need not [] accept as true allegations that contradict matters properly subject to judicial notice or by

///

13

exhibit," <u>Sprewell v. Golden State Warriors</u>, 266 F.3d 979, 988 (9th Cir.), <u>amended on denial of reh'g</u>, 275 F.3d 1187 (9th Cir. 2001) (citation omitted).

In general, *pro se* civil rights complaints are interpreted liberally in order to give *pro se* plaintiffs "the benefit of any doubt." <u>Byrd</u>, 885 F.3d at 642 (citations and internal quotation marks omitted). Nonetheless, *pro se* plaintiffs must still follow the rules of procedure that govern all litigants in federal court, including the Rule 8 requirement that a complaint minimally state a short and plain statement of a claim that is plausible on its face. <u>See</u> <u>Ghazali v. Moran</u>, 46 F.3d 52, 54 (9th Cir.) (per curiam) ("Although we construe pleadings liberally in their favor, pro se litigants are bound by the rules of procedure.") (citation omitted), <u>cert. denied</u>, 516 U.S. 838 (1995); <u>see also</u> <u>Chapman v. Pier 1 Imports (U.S.) Inc.</u>, 631 F.3d 939, 954 (9th Cir. 2011) (en banc) ("[A] liberal interpretation of a . . . civil rights complaint may not supply essential elements of the claim that were not initially pled.") (quoting <u>Pena v. Gardner</u>, 976 F.2d 469, 471 (9th Cir. 1992)) (quotation marks omitted; ellipses in original).

If a *pro se* complaint is dismissed because it does not state a claim, the court must freely grant "leave to amend" (that is, give the plaintiff a chance to file a new, corrected complaint) if it is "at all possible" that the plaintiff could fix the identified pleading errors by alleging different or new facts. <u>Cafasso v. General Dynamics C4 Systems, Inc.</u>, 637 F.3d 1047, 1058 (9th Cir. 2011) (citation omitted); <u>Lopez v. Smith</u>, 203 F.3d 1122, 1126-30 (9th Cir. 2000) (en banc) (citations and internal quotation marks omitted).

## B.     Section 1983 Claims

To state a Section 1983 claim, a plaintiff must allege that a defendant, while acting under color of state law, caused a deprivation of the plaintiff's federal rights. 42 U.S.C. § 1983; <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988) (citations omitted); <u>Taylor v. List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) (citation omitted). There is no vicarious liability in Section 1983 lawsuits. <u>Iqbal</u>, 556 U.S. at 676 (citing, *inter*

14

*alia*, <u>Monell v. Department of Social Services of the City of New York</u>, 436 U.S. 658, 691 (1978)).  Hence, a government official – whether subordinate or supervisor – may not be held liable under Section 1983 unless the particular official's own actions caused the alleged constitutional deprivation.  <u>OSU Student Alliance v. Ray</u>, 699 F.3d 1053, 1069 (9th Cir. 2012) (citing <u>id.</u>), <u>cert. denied</u>, 571 U.S. 819 (2013).

An individual "causes" a constitutional deprivation basically when he (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the [defendant] knows or reasonably should know would cause others to inflict the constitutional injury."  <u>Lacey v. Maricopa County</u>, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (citation and quotation marks omitted).

Similarly, a government official acting in a supervisory capacity "causes" a deprivation to the extent he (1) personally participates in or directs a subordinate's constitutional violation; or (2) was not "physically present when the [plaintiff's] injury occurred," but the constitutional deprivation can, nonetheless, be "directly attributed" to the supervisor's own wrongful conduct.  <u>Starr v. Baca</u>, 652 F.3d 1202, 1207 (9th Cir. 2011), <u>cert. denied</u> 566 U.S. 982 (2012); <u>see also</u> <u>OSU Student Alliance</u>, 699 F.3d at 1069 (citing <u>Iqbal</u>, 556 U.S. at 676).

Allegations regarding causation "must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988) (citations omitted).

### C. Eighth Amendment – Failure to Protect

The Eighth Amendment prohibits "the infliction of 'cruel and unusual punishments' on those convicted of crimes."  <u>Wilson v. Seiter</u>, 501 U.S. 294, 296-97 (1991) (citation omitted).  Under the Eighth Amendment, prison officials have a

duty, among others, "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (same) (citing id.). A prison official violates this duty when (1) a prison inmate is incarcerated under conditions that objectively pose a substantial risk of serious harm from another inmate; and (2) the official responds with deliberate indifference – *i.e.* subjectively knows of the risk an inmate is facing and deliberately "disregards that risk by failing to take reasonable measures to abate it." See Farmer, 511 U.S. at 837, 847. To act with deliberate indifference, an official must be *subjectively* "aware of facts from which the inference could be drawn that [the inmate faces] a substantial risk of serious harm," and actually draw such an inference. See id. at 837. That an official "*should* have been aware" of a particular risk to an inmate, but was not, does not establish an Eighth Amendment violation "no matter how severe the risk." Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (en banc) (citation and internal quotation marks omitted; emphasis in original), cert. denied, 135 S. Ct. 946 (2015). Mere negligence or civil recklessness does not violate the Eighth Amendment. See Farmer, 511 U.S. at 835-47 (citations omitted).

As noted above, and as especially true when, like here, a plaintiff seeks to hold an individual defendant personally liable for damages because another prisoner attacked him, the causation inquiry between the deliberate indifference and the Eighth Amendment deprivation requires a very individualized approach which accounts for the duties, discretion, and means of each defendant. Leer, 844 F.2d at 633-34 (citation omitted). The prisoner must set forth specific facts as to each individual defendant's deliberate indifference. Id. at 634. There must be an affirmative link between a defendant's actions and the claimed deprivation. See Rizzo v. Goode, 423 U.S. 362 (1976).

///

///

16

**D.  Fourteenth Amendment – Due Process Violation Arising from Failure Properly to Process Grievances**

In general, a prison official's improper processing of an inmate's grievances, without more, cannot serve as a basis for Section 1983 liability under the Due Process Clause.  See Ramirez v. Galaza, 334 F.3d 850, 860 (9th Cir. 2003) (Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure.") (citation omitted), cert. denied, 541 U.S. 1063 (2004); Mann v. Adams, 855 F.2d 639, 640 (9th Cir.) (due process not violated simply because defendant fails properly to process grievances submitted for consideration), cert. denied, 488 U.S. 898 (1988); see, e.g., Todd v. California Department of Corrections and Rehabilitation, 615 Fed. Appx. 415, 415 (9th Cir. 2015) (district court properly dismissed claim based on allegations of improper "processing and handling of [] prison grievances," because there is no "'constitutional entitlement to a specific prison grievance procedure'") (citation omitted); Shallowhorn v. Molina, 572 Fed. Appx. 545, 547 (9th Cir. 2014) (district court properly dismissed Section 1983 claims against defendants who "were only involved in the appeals process") (citation omitted).

**E.  ADA**

To state a claim for violation of Title II of the ADA, a plaintiff must allege that (1) he is a qualified individual with a disability; (2) he was excluded from participation in or otherwise discriminated against with regard to a public entity's services, programs, or activities; and (3) such exclusion or discrimination was by reason of his disability.  Lovell v. Chandler, 303 F.3d 1039, 1052 (9th Cir. 2002), cert. denied, 537 U.S. 1105 (2003); Atayde v. Napa State Hospital, 255 F. Supp. 3d 978, 1000 (E.D. Cal. 2017) (citing id.).  The provisions of Title II apply to state prisons.  See Pierce v. County of Orange, 526 F.3d 1190, 1214 (9th Cir. 2008) (citing, in part, Pennsylvania Department of Corrections v. Yeskey, 524 U.S. 206, 210 (1998)), cert. denied, 555 U.S. 1031 (2008).  Such provisions, however, only

provide for causes of action against public entities, not public officials sued in their individual capacities.  See 42 U.S.C. § 12132; <u>Miranda B. V. Kitzhaber</u>, 328 F.3d 1181, 1187 (9th Cir. 2003)); <u>see also</u> <u>Baribeau v. City of Minneapolis</u>, 596 F.3d 465, 484 (8th Cir. 2010) ("Individuals in their personal capacities [] are not subject to suit under Title II [of the ADA], which provides redress only from public entities.") (citing <u>Alsbrook v. City of Maumelle</u>, 184 F.3d 999, 1005 n.8 (8th Cir. 1999) (en banc), <u>cert. dismissed</u>, 529 U.S. 1001 (2000)); <u>Johnson v. County of Los Angeles</u>, 2015 WL 179773, *6 (C.D. Cal. Jan. 14, 2015) (ADA claims against defendants in their individual capacities not cognizable; collecting district court cases holding same); <u>cf.</u> <u>Vinson v. Thomas</u>, 288 F.3d 1145, 1156 (9th Cir. 2002) (plaintiff cannot sue state officials in their individual capacities pursuant to Section 1983 to vindicate rights created by Title II of the ADA), <u>cert. denied</u>, 537 U.S. 1104 (2003).

## IV.    DISCUSSION

The Second Amended Complaint is deficient in, at least, the following respects:

First, the Second Amended Complaint does not state a viable Section 1983 claim against the CDCR.  The Eleventh Amendment prohibits suits against a state or its agencies or departments for legal or equitable relief in federal court where, like here, the state has not waived, and Congress has not overridden the state's sovereign immunity.  See <u>Will v. Michigan Department of State Police</u>, 491 U.S. 58, 66-71 (1989) (citations omitted); <u>Papasan v. Allain</u>, 478 U.S. 265, 276-77 (1986) (citations omitted); <u>Dittman v. State of California</u>, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (Section 1983 not intended to abrogate State's Eleventh Amendment immunity and State of California has not waived sovereign immunity with respect to Section 1983 claims) (citations omitted), <u>cert. denied</u>, 530 U.S. 1261 (2000); <u>see, e.g.</u>, <u>Alabama v. Pugh</u>, 438 U.S. 781, 782 (1978) (civil rights suit against State Board of Corrections barred by Eleventh Amendment absent state

consent) (citations omitted); <u>Brown v. California Department of Corrections</u>, 554 F.3d 747, 752 (9th Cir. 2009) (CDCR entitled to Eleventh Amendment immunity).

Second, the Second Amended Complaint does not state viable official capacity Section 1983 claims against the individual defendants. Section 1983 suits in federal court brought against state employees in their official capacities are the equivalent of such suits against the state employer itself, and thus are generally barred by the Eleventh Amendment. <u>See</u> <u>Will</u>, 491 U.S. at 71 (state employees acting in their official capacities not "persons" under Section 1983) (citing, in part, <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985)). The one, narrow exception is when a Section 1983 complaint seeks prospective, injunctive relief from a present and continuing violation of federal law by a specific plaintiff against a particular state official. <u>See</u> <u>Papasan</u>, 478 U.S. at 276-78 (citations omitted); <u>Pennhurst State School & Hospital v. Halderman</u>, 465 U.S. 89, 102-03 (1984) (citations omitted); <u>Doe v. Lawrence Livermore National Laboratory</u>, 131 F.3d 836, 839 (9th Cir. 1997); <u>see also</u> 18 U.S.C. § 3626 (a)(1) ("Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs."). Here, however, the allegations in the Second Amended Complaint do not support such an exception. Accordingly, plaintiff's Section 1983 claims must be dismissed as against the CDCR and against the individual defendants to the extent they are sued in their official capacities.

Third, multiple paragraphs in the Second Amended Complaint allege that one or more defendants and/or other CIM officials acted collectively to injure plaintiff. (<u>See, e.g.</u>, SAC ¶¶ 44, 54, 59, 63). Such general and conclusory allegations against an indistinguishable group of defendants and others do not demonstrate a causal link between any *individual* defendant's conduct and an alleged constitutional violation, and therefore are insufficient to state a viable claim against any of the defendants. <u>See</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 142 (1979)

("[A] public official is liable under [Section] 1983 only 'if he *causes* the plaintiff to be subjected to a deprivation of his constitutional rights.'") (citation omitted; emphasis in original); Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002) ("In order for a person acting under color of state law to be liable under section 1983 there must be a showing of personal participation in the alleged rights deprivation[.]"); Taylor, 880 F.2d at 1045 ("Liability under section 1983 arises only upon a showing of personal participation by the defendant."). To state a viable Section 1983 individual capacity claim a plaintiff must, at a minimum, allege facts which demonstrate the <u>specific</u> acts each <u>individual</u> defendant did and how that individual's alleged misconduct <u>specifically</u> violated plaintiff's constitutional rights.

Fourth, the Second Amended Complaint fails to state a viable individual capacity ADA claim since such claims are not cognizable under Title II of the ADA. See Baribeau, 596 F.3d at 484; Alsbrook, 184 F.3d at 1005 n.8; Garcia v. S.U.N.Y. Health Sciences Center of Brooklyn, 280 F.3d 98, 107 (2d Cir. 2001); cf. Vinson, 288 F.3d at 1156 (Section 1983 claims predicated on ADA).

Fifth, plaintiff also fails to state a viable ADA claim against the CDCR, or any individual defendant sued in his or her official capacity, at a minimum because the Second Amended Complaint does not plausibly allege that plaintiff was discriminated against *by reason of his disability*.

Sixth, the Second Amended Complaint fails to state viable Section 1983 individual capacity claims predicated upon the Fourteenth Amendment. Plaintiff's Fourteenth Amendment claims appear to be predicated upon the defendants' alleged improper screening and processing of plaintiff's inmate grievances and appeals. (SAC ¶¶ 6-7, 11, 16-17, 46, 48-53). However, aside from defendants Gill and Padilla, none of the defendants are alleged to have played a role in screening or processing plaintiff's grievances. Even though defendants Gill and Padilla allegedly did participate in processing one or more of plaintiff's grievances, a

20

prison official's processing of an inmate's appeals, without more, cannot serve as a basis liability, at a minimum, to the extent a Section 1983 claim is predicated on a Fourteenth Amendment violation.[5]  See Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640; Todd, 615 Fed. Appx. at 415; Shallowhorn, 572 Fed. Appx. at 547.

Seventh, although a closer call, the Second Amended Complaint currently fails to state a viable Eighth Amendment failure to protect individual capacity claim against any of the individual defendants.  Preliminarily, to the extent plaintiff asserts that one or more defendant violated a particular prison policy and/or state regulation (see, e.g., SAC ¶¶ 3-8, 44, 46, 48, 50-51;  SAC Ex. B1 [appeal pursuant to Sections 3269 and 3269.1, regulations re: inmate housing]; SAC Exs. at 26a [January 19, 2016 policy Memorandum re: "Inmate Housing Assignment Considerations During Of the Screening and Housing Process"]), the Second Amended Complaint fails to state a viable Section 1983 claim.  See Crowley v. Nevada Secretary of State, 678 F.3d 730, 736 (9th Cir. 2012) (pure violations of state law not cognizable under Section 1983) (citations omitted); see, e.g., Peralta, 744 F.3d at 1087 (failure to follow prison procedures "[not], of itself, enough to establish a violation of [] constitutional rights") (citing Ramirez, 334 F.3d at 860; Mann, 855 F.2d at 640).

As for defendants Gill and Padilla, the Second Amended Complaint generally fails to state a viable Section 1983 individual capacity failure to protect

---

[5]While a prison official's alleged failure to process an inmate grievance may implicate a prisoner's First Amendment right of access to the courts, the Complaint fails to state such a claim because plaintiff does not plausibly allege that any defendant *actually failed* to process his grievances, that an actual injury resulted from any failure to process plaintiff's grievances or that any such conduct actually "hindered his efforts to pursue a [nonfrivolous] legal claim."  Lewis v. Casey, 518 U.S. 343, 351-53, 354-55 (1996) (To establish any denial of access claim, a plaintiff must show that he suffered an "actual injury" as a result of the defendants' actions.); see generally Bounds v. Smith, 430 U.S. 817, 821 (1977) (well-established that prisoners have a constitutional right of access to the courts), abrogated in part on other grounds by, Lewis, 518 U.S. at 354.

claim.  Plaintiff does not plausibly allege that defendants Gill and Padilla played

any role in the housing assignments of plaintiff or his cellmates.  Moreover, the

Second Amended Complaint does not plausibly suggest that either such defendant

actually knew that any failure adequately to process one or more of plaintiff's

grievances posed a substantial risk of serious harm to plaintiff.  See, e.g., Peralta,

744 F.3d at 1087 (failure to follow prison procedure for processing inmate appeals

may establish constitutional violation only if defendant *actually knew* his or her

actions "put inmates at risk"); Stein v. Woods, 592 Fed. Appx. 582, 583 (9th Cir.

2015) ("official whose only role was reviewing internal appeal does not act with

deliberate indifference absent knowledge of a substantial risk of serious harm")

(citing id. at 1086-88).  Accordingly, the Second Amended Complaint does not

state a viable failure to protect claim against defendants Gill or Padilla.

     To the extent plaintiff's failure to protect claim is predicated on the Adams

Cell Assignment – the only Eighth Amendment claim expressly alleged against

defendants John Doe 1 and Ryles – the Second Amended Complaint fails to state a

viable Section 1983 claim against such defendants.  For example, the Second

Amended Complaint does not plausibly allege that placing Adams in plaintiff's

cell objectively posed a *substantial* risk of serious harm to plaintiff, or if so, that

John Doe 1 or Ryles actually knew as much.  Plaintiff's conclusory, and at times

convoluted, allegations that "plaintiff was in fear of being assaulted by Adams

given Adams' extensive history of violence, and that staff had failed to

acknowledge several necessary factors that would exclude inmate Adams from

being housed with plaintiff" (SAC ¶ 31), and that "defendant Ryles was aware of

the cell fight inmate Adams was involved in" (SAC ¶ 36) do not *show* that

defendants John Doe 1 and Ryles were, in fact, aware of such facts (and/or that

defendant Ryles actually believed plaintiff's assertions to be true at the time),

much less that either defendant had any basis for inferring therefrom (and *actually*

did infer) that Adams was likely to attack plaintiff if the two inmates were housed

together.  Indeed, allegations that defendant Ryles "repeatedly" told Adams to "[j]ust [not] talk to [plaintiff]" in response to Adams' complaints about being assigned to plaintiff's cell, and that Ryles angrily ordered plaintiff to return to his cell when plaintiff, likewise, refused to accept Adams as a cellmate and said Adams was his "enemy" and that he feared for his safety for the reasons asserted above, suggest that Ryles, at most, believed plaintiff and Adams were merely upset about their housing assignment, not that Adams necessarily posed any particular threat to plaintiff's safety.  While it is also possible that Ryles could have interpreted the inmates' complaints as indicating a potential for tension between Adams and plaintiff, such possibility is insufficient to *show* that defendant Ryles subjectively knew that housing the two inmates together created a substantial risk of *serious* harm to plaintiff.  Indeed, the Second Amended Complaint does not reasonably support an inference that defendant Ryles even suspected as much at the time.  Even so, such a suspicion alone would not plausibly show that defendant Ryles responded with deliberate indifference under the circumstances.  See, e.g., Berg v. Kincheloe, 794 F.2d 457, 459 (9th Cir. 1986) (prison officials "must have more than a mere suspicion that an attack will occur" before they are obligated to take steps to prevent an inmate assault) (citations and internal quotation marks omitted).  Moreover, plaintiff does not plausibly allege that it was within the scope of defendant Ryles' duties and responsibilities to re-house Adams after Ryles had just been directed to move Adams from another building by an entirely different official (*i.e.*, John Doe 1), or that defendant Ryles had any obligation to question that decision under the circumstances.

In addition, conclusory allegations that "[a]ll staff" had "complete access to [an] inmate's prison h[i]story" and "had direct and unfettered access to all inmates' prison history factors, including plaintiff's, and those inmates that would be housed with plaintiff" (SAC ¶¶ 4-8, 36), do not plausibly suggest that defendant Ryles – or any other CIM official – had, in fact, accessed such information in connection with

plaintiff's cell mate assignments and/or when responding to plaintiff about his housing concerns. To the extent plaintiff suggests that defendants John Doe 1 and Ryles *should* have known that housing Adams and plaintiff together posed a severe risk of harm to plaintiff, plaintiff fails to establish that either defendant acted with deliberate indifference in violation of the Eighth Amendment. See Peralta, 744 F.3d at 1086 (citation omitted).

To the extent plaintiff's failure to protect claim is predicated on the Cantrell Cell Assignment – which is the only Eighth Amendment claim expressly alleged against defendant John Doe 2 and also names defendant Udave – the Second Amended Complaint fails to state a viable Section 1983 claim against such defendants. For example, plaintiff's conclusory allegations that inmate Cantrell "had an extensive history of being ag[g]ressive with cell partners, documented by disciplinary reports" (SAC ¶ 42), had "bragged to plaintiff about his extensive history of fighting with his former cell partners" (SAC ¶ 43), and had exhibited unspecified "aggressive behavior" towards plaintiff (SAC ¶43), do not plausibly suggest that defendants John Doe 2 or Udave were subjectively aware of such facts, much less actually drew an inference therefrom that Cantrell posed a unique threat to plaintiff beyond that which might reasonably be expected in a typical prison setting. See generally Hudson v. Palmer, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."); Berg, 794 F.2d at 461 (observing prison environment is "at best, tense[,]" "sometimes explosive," and "always potentially dangerous").

Moreover, plaintiff does not plausibly allege that, even if inmate cell assignment in general was within defendant Udave's duties, discretion, or means, defendant Udave subjectively knew plaintiff faced a substantial risk of serious harm on any specific occasion when the defendant allegedly "refused to take any action to separate plaintiff and Cantrell" or that by denying any particular request

24

Udave failed to take reasonable measures to avoid any such risk at a particular moment in time.  Neither does the Second Amended Complaint plausibly allege that plaintiff suffered any injury at all due to any misconduct by defendants John Doe 2 or Udave in connection with the Cantrell Cell Assignment (*i.e.*, plaintiff does not allege that Cantrell ever attacked him while the two inmates were in the same cell).  Conclusory allegations that Cantrell practiced Satanism and was offended by plaintiff's Christianity, bragged to plaintiff about his extensive history of fighting with former cellmates, "displayed satanic symbols . . . and practiced satanic rituals in the cell[,]" and "exhibited aggressive behavior" at unspecified times or frequency (SAC ¶ 43) do not even remotely suggest that plaintiff was denied the "the minimal civilized measure of life's necessities" that would be an Eighth Amendment violation.

To the extent plaintiff's failure to protect claim is predicated on the Gallegos Cell Assignment – which is the only Eighth Amendment claim expressly alleged against defendant John Doe 3 and also names defendant Udave – the Second Amended Complaint fails to state a viable Section 1983 claim against such defendants.  The Second Amended Complaint does not plausibly allege that either such defendant actually knew about Gallegos' alleged "extensive documented history of in cell violence with his cellmates," or subjectively believed that Gallegos posed a substantial risk of serious harm simply because plaintiff complained to Udave – much like plaintiff had with respect to the prior inmate assigned to his cell – that Gallegos was exhibiting unspecified "ag[g]ressive behavior towards plaintiff."  (SAC ¶ 56).

The Second Amended Complaint also fails to state a viable Eighth Amendment claim against defendants John Doe 3 or Udave predicated on the July 13, 2016 "attac[k]" of plaintiff by Gallegos.  Plaintiff's allegations do not establish that defendants John Doe 3 or Udave responded with deliberate indifference under the circumstances, in part, since defendant Udave or some other

25

official allegedly took reasonable measures to abate the harm (*i.e.*, obtained medical attention for plaintiff and rehoused Gallegos in a different building after the altercation).  (SAC ¶ 57).

Finally, the remaining paragraphs in the Second Amended Complaint are prolix (*i.e.*, unnecessarily long, wordy, and tedious), at times confusing and incomprehensible, and patently fail to frame plaintiff's claims with the simplicity, conciseness, and clarity required by Rule 8.  Most of the allegations are replete with unnecessary background information as well as duplicative, irrelevant, and conclusory factual and legal assertions.  (See, e.g., SAC ¶¶ 21, 23-26, 53, 61-62, 64-67).  Conclusory allegations addressed to specific claims ultimately amount to, at most, the "formulaic recitation of the elements" of a civil rights cause of action.  (See, e.g., SAC ¶¶ 9-17, 22, 48, 54, 59, 63).  On the whole, such allegations do nothing to plausibly connect any particular act or incident to a specific legal claim against any individual defendant, and consequently are insufficient to state any viable Section 1983 claim.  See Pena v. Gardner, 976 F.2d at 471 (vague and conclusory allegations of official participation in civil rights violations not sufficient to state a claim under Section 1983) (citation omitted); see also Iqbal, 556 U.S. at 680-84 (conclusory allegations which amount to nothing more than a "formulaic recitation of the elements" insufficient under Rule 8 pleading standard) (citations omitted); Knapp v. Hogan, 738 F.3d 1106, 1109-10 & n.1 (9th Cir. 2013) (violations of Rule 8's "short and plain statement" requirement "warrant dismissal") (citations omitted), cert. denied, 135 S. Ct. 57 (2014).  The Second Amended Complaint also appears to be incomplete – *i.e.*, it seems to be missing pages containing some or all of paragraphs 36-41 and 67-71.

///

///

# V.    ORDERS

In light of the foregoing, IT IS HEREBY ORDERED:

1.    The Second Amended Complaint is dismissed with leave to amend.  If plaintiff intends to pursue this matter, he shall file a Third Amended Complaint within twenty (20) days of the date of this Order which cures the pleading defects set forth herein.[6]  The Clerk is directed to provide plaintiff with a Central District of California Civil Rights Complaint Form, CV-66, to facilitate plaintiff's filing of a Third Amended Complaint if he elects to proceed in that fashion.

2.    If plaintiff does not intend to pursue this matter, he shall sign and return the attached Notice of Dismissal by the foregoing deadline which will result in the voluntary dismissal of this action without prejudice.

3.    **Plaintiff is cautioned that, absent further order of the Court, plaintiff's failure timely to file a Third Amended Complaint or Notice of Dismissal, may be deemed plaintiff's admission that amendment is futile, and may result in the dismissal of this action with or without prejudice on the grounds set forth above, on the ground that amendment is futile, for failure diligently to prosecute and/or for failure to comply with the Court's Order.**

IT IS SO ORDERED.

DATED: January 17, 2019

_____

HONORABLE CORMAC J. CARNEY

---

[6]Any Third Amended Complaint must:  (a) be labeled "Third Amended Complaint"; (b) be complete in and of itself and not refer in any manner to the Original, First Amended, or Second Amended Complaints – *i.e.*, it must include all claims on which plaintiff seeks to proceed (Local Rule 15-2); (c) contain a "short and plain" statement of the claim(s) for relief (Fed. R. Civ. P. 8(a)); (d) make each allegation "simple, concise and direct" (Fed. R. Civ. P. 8(d)(1));
(e) set forth clearly the sequence of events giving rise to the claim(s) for relief; (f) allege specifically what each individual defendant did and how that individual's conduct specifically violated plaintiff's civil rights; and (g) not add defendants or claims without leave of court, cf. George v. Smith, 507 F.3d 605, 607 (7th Cir. 2007) (civil rights plaintiff may not file "buckshot" complaints – *i.e.*, a pleading that alleges unrelated violations against different defendants).

Attachments                     UNITED STATES DISTRICT JUDGE